UNITED SEWING MACHINE DISTRIBUTORS, INC. *v.* CALHOUN

No. 40516 May 27, 1957 95 So. 2d 453

*L. Percy Quinn, Noel W. Buckley,* Jackson, for appellant.

*Dale H. McKibben,* Jackson, for appellee.

LEE, J.

This cause originated by reason of a claimant's issue following the seizure under execution of a Chevrolet automobile.

On February 13, 1956, Murray E. Calhoun filed his bill for an accounting against Francis K. Heath in respect to items alleged to have accrued during the year 1955. The cause was returnable to the regular June 1956 term of the court. After the hearing, the court, on August 1, 1956, rendered a decree which awarded to Calhoun the sum of $1,245.70. An execution was issued on this decree on September 8, 1956, and the automobile in question was seized by the sheriff, who, according to his return, valued the same at $1,325.00.

United Sewing Machine Distributors, Inc., by Gladys L. Heath as secretary-treasurer, and with herself and Lillian M. Moore, as sureties, gave bond and retained the car. Mrs. Heath also made affidavit that the car was the property of United Sewing Machine Distributors, Inc. Issue was joined on the question of ownership.

The proof showed that a charter of incorporation of United Sewing Machine Distributors, Inc. was granted

on February 6, 1956, just seven days before Calhoun filed his suit, with F. K. Heath, Gladys Heath and Lilliam M. Moore, as incorporators. The amount of authorized capital was fifty shares of common stock with a par value of $100 per share, and business could begin when twenty-five shares of stock had been subscribed and paid for. The Heaths were husband and wife, and Lillian M. Moore was a niece of Mrs. Heath.

Minutes of a purported organizational meeting of the board of directors of the corporation, of date of February 9, 1956, following the stockholders meeting, were introduced in evidence. It appeared that F. K. Heath, Lillian M. Moore and Gladys Heath were elected as president, vice president and secretary-treasurer, respectively, with salaries of $100 plus commissions per month, a share in the profits only, and $160 per month, respectively. A depository was designated with the right of both Mr. and Mrs. Heath to withdraw funds. A resolution was adopted for the issuance of twenty-five shares of capital stock to be paid for in money or property for a fair valuation.

There was introduced in evidence an alleged bill of sale, of date of February 10, 1956, whereby F. K. Heath, for a consideration of $1 and the issuance to him of twenty shares of common stock of the value of $100 per share, undertook to sell and convey the Chevrolet automobile to the corporation. Another alleged bill of sale, of the same date, whereby, for a like consideration, Gladys Heath undertook to sell and convey a 1955 Buick automobile to the corporation was also introduced. Neither of these conveyances was recorded. The book of stock shares, showing the issuance on February 10, 1956, of twenty shares to F. K. Heath, twenty shares to Gladys L. Heath and two shares to Lillian M. Moore was also introduced in evidence.

But it was admitted that the charter of incorporation had not been published in a newspaper of general circula-

tion in the area; that it had not been recorded in the Office of the Chancery Clerk of Hinds County; and that the report of its organization had not been filed with the Secretary of State.

It was shown that a road and bridge privilege license for this automobile was issued by the Tax Collector of Hinds County to F. K. Heath on November 29, 1955; that, before the alleged organization of the corporation, he drove the automobile home every evening; and that since the alleged organization, he also drove it home every day. He admitted that he paid to himself out of petty cash the $1 consideration, which was mentioned in the bill of sale.

F. K. Heath, on October 1, 1955, had obtained a privilege license, on his application, to do business as "United Sewing Machine Distributors" at 415 W. Capitol Street in the City of Jackson. On October 1, 1956, while the privilege license was issued to the corporation, it authorized the doing of business as "United Sewing Machine Distributors" at the same place, namely, 415 W. Capitol Street. So far as doing business was concerned, there was no change in the firm name after the alleged organization of the corporation.

The two cars, the Buick and the Chevrolet, put into the corporation by Mr. and Mrs. Heath, constituted the capital stock. No new money was added. Heath admitted that on April 7, 1956, after the filing of this suit, he and his wife transferred their forty shares of stock to Billy M. Mills as collateral for a loan of $3,000.00.

During the trial, a belated report of the organization was made to the Secretary of State, who assessed a penalty for the delay.

At the conclusion of the evidence, the chancellor found for the judgment creditor. The decree directed the sale of the Chevrolet automobile within ten days, or in lieu thereof a recovery against the sureties for the amount

of the judgment, plus damages and costs. From the decree entered, the corporation appealed.

The burden of the appellant's argument is that, while the corporation was perhaps not a *de jure* corporation, it was a *de facto* corporation, and as such, it was the owner of this automobile and was entitled to prevail against a judgment creditor of F. K. Heath.

Under Section 5310, Code of 1942, Annotated, it was necessary that a copy of the charter, within thirty days after it had been granted, should be published in a newspaper of the county, as therein provided. By code Section 5320, the corporation was required, within sixty days after its organization, to make report thereof to the Secretary of State. By Code Section 5324 it was required to have the charter recorded in the Office of the Chancery Clerk of Hinds County. These requirements were not observed.

The cited Mississippi cases do not seem to be in point as to what constitutes a de facto corporation. Diamond Rubber Company v. Fohey, 111 Miss. 654, 71 So. 906, is of little value.

 13 Am. Jur., Corporations, Section 49, p. 195, lays down the requisites for the existence of a de facto corporation as: "(1) a valid law under which a corporation with the powers assumed might be incorporated; (2) a bona fide attempt to organize a corporation under such law; and (3) an actual exercise of corporate powers." See also 18 C. J. S., Corporations, Section 99, pp. 494-5.

In Sections 53 and 54, pp. 197-8, of American Jurisprudence, supra, there is a discussion of the effect of a failure to comply with particular requirements. It is recognized that the failure to file a paper required by law is entitled to great weight on the question of good faith, but that it is not necessarily conclusive. See also 18 C. J. S., Corporations, Section 104, pp. 498-500.

The cases are in conflict as to the effect of failure to record the charter in the proper county, some holding that this is not fatal, while others hold to the contrary. Volume 8, Fletcher Cyclopedia Corporations, Permanent Edition, Sections 3821-2.

██ █ The evident purpose of publication in a newspaper and recordation in the office of the chancery clerk is to give notice of the existence of the corporate entity to the general public and to all others. In this instance, there was no difference, before and after the granting of the charter, in the location of the business or its firm name. It was doing business at the same place and in the same name. Neither the general public nor creditors could be justly charged with being remiss if they failed to discover that the business had been incorporated. It is hard to see how a claim of good faith, on the part of the incorporators, can be substantiated in view of so great neglect on their part in conforming to the statutes, and in failing to apprise creditors and others of the corporate existence.

It must be remembered that no new capital was paid in; that the principal stockholders were husband and wife; that, without express approval on the minutes of the board, they placed the two automobiles in the corporation for a stock value of $4,000; and that, after this suit had been filed, they transferred the forty shares of stock to another person as collateral for a $3,000 loan. When these facts are taken into consideration, together with the failure to comply with the statutes in the three respects above-mentioned, it is inescapable that the organization of this corporation was not in good faith, but was intended as a stand-by device to put the property of F. K. Heath beyond execution in event a decree should be rendered against him in the pending litigation.

While the opinion of the learned chancellor does not seem to be expressly based on the ground given in this

opinion, the decree dismissed the claim of the corporation, and thus held that the lien of the judgment creditor was superior. The right result was reached, and the decree is therefore affirmed.

Affirmed.

*Hall, P. J., and Arrington, Ethridge* and *Gillespie, JJ.,* concur.